01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
07                                      AT SEATTLE

08   DONALD L. SKEENS JR.,                    )
                                              )   CASE NO. C12-5070-RAJ-MAT
09          Plaintiff,                        )
                                              )
10      v.                                    )
                                              )   REPORT AND RECOMMENDATION
11   MICHAEL J. ASTRUE, Commissioner          )   RE: SOCIAL SECURITY
     of Social Security,                      )   DISABILITY APPEAL
12                                            )
            Defendant.                        )
13   _____        )

14          Plaintiff Donald L. Skeens Jr. proceeds through counsel in his appeal of a final

15   decision of the Commissioner of the Social Security Administration (Commissioner).  The

16   Commissioner denied Plaintiff's applications for Supplemental Security Income (SSI) and

17   Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge

18   (ALJ).  Having considered the ALJ's decision, the administrative record (AR), and all

19   memoranda of record, the Court recommends that this matter be REVERSED and

20   REMANDED for further proceedings.

21   / / /

22   / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 <u>FACTS AND PROCEDURAL HISTORY</u>

02     Plaintiff was born on XXXX, 1964.[1]  He completed high school (special education)

03 and previously worked as a photocopier and a construction worker.  (AR 182.)

04     Plaintiff filed applications for DIB and SSI on January 16, 2007, and October 19,

05 2007, respectively.  (*See* AR 159-165.)   Those applications were denied initially and on

06 reconsideration, and Plaintiff timely requested a hearing. (AR 79-81, 84-85, 90-91.)

07     On June 8, 2010, ALJ Gary Suttles held a hearing, taking testimony from Plaintiff and

08 a vocational expert.  (AR 32-76.)  On June 28, 2010, the ALJ issued a decision finding

09 Plaintiff not disabled.  (AR 17-27.)  Plaintiff timely appealed.  The Appeals Council denied

10 Plaintiff's request for review on November 22, 2011 (AR 1-5), making the ALJ's decision the

11 final decision of the Commissioner.   Plaintiff appealed this final decision of the

12 Commissioner to this Court.

13 <u>DISCUSSION</u>

14     The Commissioner follows a five-step sequential evaluation process for determining

15 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

16 must be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff had

17 attempted to return to work in 2002 and in 2005, but had not engaged in substantial gainful

18 activity since October 19, 2001, the alleged onset date.  (AR 19.)  At step two, it must be

19 determined whether a claimant suffers from a severe impairment.  The ALJ found Plaintiff's

20

21 _____

     [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule
of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic
22 Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United
States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  learning disorder (cognitive impairment), depression, and status-post right index finger injury

02  to be severe.  (AR 19.)  Step three asks whether a claimant's impairments meet or equal a

03  listed impairment.  The ALJ found that Plaintiff's impairments did not meet or equal the

04  criteria of a listed impairment. (AR 19-23.)

05      If a claimant's impairments do not meet or equal a listing, the Commissioner must

06  assess residual functional capacity (RFC) and determine at step four whether the claimant has

07  demonstrated an inability to perform past relevant work.  The ALJ found Plaintiff capable of

08  performing light work, with the following exertional limitations: he can lift and/or carry up to

09  20 pounds maximum occasionally, 10 pounds frequently; walk 6 of 8 hours; stand/sit 6 of 8

10  hours.  The ALJ found that Plaintiff has "unlimited pushing/pulling and gross and fine

11  dexterity but occasional fingering, grasping, handling, and feeling with the right index

12  finger."  (AR 23.)  Plaintiff's left hand is normal.  Plaintiff cannot climb ladders, ropes, or

13  scaffolds, or run.  Plaintiff can have "limited exposure" to heights, dangerous machinery, and

14  extreme cold.  (AR 23.)  He can climb stairs, bend, stoop, crouch, crawl, balance, twist, and

15  squat.  As to mental limitations, the ALJ found that Plaintiff can get along with others,

16  respond and adapt to workplace changes and supervision, understand simple 1- to 2-step

17  instructions, and concentrate and perform simple tasks.  With that assessment, the ALJ found

18  Plaintiff unable to perform any past relevant work.

19      If a claimant demonstrates an inability to perform past relevant work, the burden shifts

20  to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

21  an adjustment to work that exists in significant levels in the national economy.  Considering

22  the Medical-Vocational Guidelines and with the assistance of the vocational expert, the ALJ

01   found Plaintiff capable of performing other jobs, such as work as courier, café attendant, and

02   marking clerk.  (AR 26.)

03         This Court's review of the ALJ's decision is limited to whether the decision is in

04   accordance with the law and the findings supported by substantial evidence in the record as a

05   whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means

06   more than a scintilla, but less than a preponderance; it means such relevant evidence as a

07   reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

08   F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

09   supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

10   F.3d 947, 954 (9th Cir. 2002).

11         Plaintiff argues the ALJ erred by (1) failing to state any reason to reject the opinions

12   of Mark Heilbrunn, M.D., and Norma Brown, Ph.D. and yet failing to include all of

13   limitations identified by them; (2) failing to incorporate all of Plaintiff's limitations in the

14   hypothetical question posed to the vocational expert (VE); (3) improperly discrediting the

15   Plaintiff's testimony; and (4) failing to consider all lay evidence. The Commissioner argues

16   that the ALJ's decision is supported by substantial evidence and should be affirmed.

17                    Medical Evidence[2], RFC Assessment & Vocational Expert Testimony

18         Three of Plaintiff's assignments of error converge into one issue: whether the ALJ

19   included all limitations contained in the credited opinions of examining physicians Mark

20         [2] Plaintiff's Opening Brief contains a recitation of "other medical evidence" that is not

21   "inconsistent with the medical opinions of Dr. Heilbrunn and Dr. Brown." (Dkt. 13 at 7-8.) Plaintiff
     provides no argument or analysis of this evidence, and does not identify any particular error, but

22   argues simply that the "court should hold that the ALJ's failure to properly evaluate all of the medical
     evidence is legal error requiring reversal." (Dkt. 13 at 8.) Without more, the Court — following the
     Commissioner's lead (*see* Dkt. 16-1 at 6:5-7) — declines to address this further.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01   Heilbrunn and Norma Brown in his RFC assessment and in his hypothetical posed to the VE.

02   The Commissioner contends that the ALJ properly translated the opinions of Drs. Heilbrunn

03   and Brown into functional limitations described in the RFC assessment and in the

04   hypothetical, and that any translation error was harmless.

05   <u>Legal Standards</u>

06        In general, more weight should be given to the opinion of a treating physician than to a

07   non-treating physician, and more weight to the opinion of an examining physician than to a

08   non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not

09   contradicted by another physician, a treating or examining physician's opinion may be

10   rejected only for "'clear and convincing'" reasons.  *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d

11   1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion

12   may not be rejected without "'specific and legitimate reasons' supported by substantial

13   evidence in the record for so doing."  *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499,

14   502 (9th Cir. 1983)).  The ALJ may reject physicians' opinions "by setting out a detailed and

15   thorough summary of the facts and conflicting clinical evidence, stating his interpretation

16   thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing

17   *Magallanes*, 881 F.2d at 751).  Rather than merely stating her conclusions, the ALJ "must set

18   forth [her] own interpretations and explain why they, rather than the doctors', are correct."  *Id*.

19   (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

20        At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

21   assess his work-related abilities on a function-by-function basis, including a required narrative

22   discussion.  *See* 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p.  RFC

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01   is the most a claimant can do considering his or her limitations or restrictions. *See* SSR 96-

02   8p. The ALJ must consider the limiting effects of all of a claimant's impairments, including

03   those that are not severe, in determining his RFC. §§ 404.1545(e), 416.945(e); SSR 96-8p.

04         <u>Dr. Heilbrunn's Opinions</u>

05         In this case, the ALJ described the opinions of Dr. Heilbrunn without assigning any

06   particular weight:

> The results of a consultative examination performed in May 2007 revealed a
> normal hand coordination on the left but decreased fine and dexterous
> movements and manipulating with the right hand. There was no hand tremor.
> His left hands, fingers, and thumbs were normal. On his right hand, his index
> finger had a contraction flexure of 30 degrees, increased tenderness at the
> proximal interphalangeal joint, and traumatic neuroma. His grip strength was
> 4-5/5 on the right with sparing of the index finger. Strength was normal in the
> left upper extremity. His sensory functions were decreased to 50% at the
> radial aspect and 20% at the ulnar aspect of the right index finger. The
> remainder of the fingers were normal. He did not have any flexion of the right
> distal interphalageal joint of the index finger and flexion of the proximal
> interphalangeal joint of the index finger to 90 degrees. He was able to almost
> bend to the floor level. The examiner assessed that the claimant had limitation
> <u>in the use of the right hand</u> for continuous firm grasping, fine and dexterous
> movements and manipulating abilities, and for feeling on the index finger.

15   (AR 20 (citing AR 337-43) (emphasis added).)   The Plaintiff argues that the ALJ erred in

16   formulating the RFC assessment (AR 23) because he limited only Plaintiff's use of his right

17   index finger, while Dr. Heilbrunn had found Plaintiff had limited use of his entire right hand

18   for continuous firm grasping, fine and dexterous movements, and manipulation. Because the

19   ALJ implicitly credited Dr. Heilbrunn's opinions, Plaintiff contends that the ALJ should have

20   included all of the limitations identified by Dr. Heilbrunn in the RFC assessment.

21         Plaintiff's arguments are not well taken, because the ALJ's written RFC assessment

22   and the entirety of the VE's testimony are consistent with the limitations identified by Dr.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01 Heilbrunn.  Dr. Heilbrunn found that Plaintiff has "a limitation in the use of the right hand for

02 continuous firm grasping, fine and dexterous movements and manipulative abilities," and that

03 his right index finger is limited in feeling and has pain that "limits his ability of use."  (AR

04 341.)  The ALJ incorporated that finding nearly verbatim in his RFC assessment:  "The

05 examiner assessed that the claimant had limitation in the use of the right hand for continuous

06 firm grasping, fine and dexterous movements and manipulating abilities, and for feeling on

07 the index finger."  (AR 20 (emphasis added).)

08        During the hearing, the ALJ described Plaintiff's right-hand limitations in a slightly

09 convoluted manner to the VE:

10        [Plaintiff's] push/pull and gross fine is unlimited except in the right hand.  I
          will say occasional fingering, occasional fingering (sic), grasping, handling,
11        and feeling with the right index finger.  The rest of the hand, the fingering of
          the hands and the things of the fingers appears to be okay.

12

13 (AR 72-73.)  In response, the VE testified that a person with an RFC as described by the ALJ

14 could perform the jobs of marking clerk, cafeteria attendant, and deliverer.  (AR 73-74.)  To

15 the extent that the ALJ retreated from Dr. Heilbrunn's opinions regarding Plaintiff's right-

16 hand limitations beyond the index finger only in the phrasing of that hypothetical, this error

17 was harmless because Plaintiff's attorney subsequently asked the VE a follow-up hypothetical

18 that more completely summarized Dr. Heilbrunn's opinions as "a limitation in the use of the

19 right hand for continuous firm grasping, fine and dexterous movements, and manipulating

20 abilities, and for feeling on the index finger."  (AR 74.)  In response to Plaintiff's attorney's

21 hypothetical variation, the VE reiterated his testimony that a person with those limitations

22 could work as a deliverer, cafeteria attendant, or marking clerk because none "of the three

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01  jobs that I cited are particularly dexterous." (AR 75.)

02  Plaintiff takes issue with the VE's follow-up testimony regarding dexterity, arguing

03  that the identified jobs actually *are* dexterous and that Plaintiff cannot perform the jobs in

04  light of Dr. Heilbrunn's right-hand limitation for "continuous firm grasping, fine and

05  dexterous movements and manipulating abilities" and the attendant index-finger pain. (AR

06  341.) First, with regard to the dexterity required to perform the VE's identified jobs, the VE's

07  testimony is consistent with the Dictionary of Occupational Titles (DOT) because none of the

08  jobs identified require particularly high levels of dexterity.[3] Second, Plaintiff misquotes the

09  DOT when contending that all three jobs require "constant" reaching and handling, and that

10  one as requires "constant" fingering: the DOT defines all three jobs as requiring *frequent*

11  reaching and handling, and one of the jobs as requiring *frequent* fingering (the others

12  requiring occasional fingering).[4] (Dkt. 16-1 at 3-4 (citing DOT 311.677-010, 230.663-010,

13  209.587-034)). Dr. Heilbrunn's opinion did not preclude *frequent* grasping, fine/dexterous

14  movements, or manipulating abilities, but only *continuous* uses. (AR 341.) Thus, Dr.

15  Heilbrunn's opinions are not inconsistent with the VE's testimony and Plaintiff has not

16  identified any error in the RFC assessment or the ALJ's step-five findings related to the

17  limitations identified by Dr. Heilbrunn.

18  Lastly, Plaintiff's counsel asked the VE whether Plaintiff's right index finger pain, as

19  [3] The cafeteria attendant job requires low finger dexterity and middle-range manual dexterity. DOT 311.677-010. The deliverer position requires low finger and manual dexterity. DOT 230.663-

20  010. A marking clerk position requires middle-range finger dexterity and low manual dexterity. DOT 209.587-034.

21  [4] The DOT defines a "frequent" requirement as existing between 1/3 and 2/3 of the time, and a

22  "constant" requirement exists more than 2/3 of the time. *See, e.g.*, DOT 209.587-034 (defining "frequently"); DOT 726.684-050 (defining "constantly").

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01 described by Dr. Heilbrunn, would preclude Plaintiff's performance of the identified jobs, and

02 the VE testified that it was "unclear"; that it "just depends on how severe the pain is and

03 whether it's consistent or whether [INAUDIBLE] with his overall productivity."  (AR 75.)

04 Dr. Heilbrunn did not quantify the pain or specify how the pain would impair Plaintiff's use.

05 *See* AR 341 ("[Plaintiff] has pain at the index finger, which also limits his ability of use.").  In

06 the absence of an identified, specific functional limitation, the Plaintiff cannot show that the

07 ALJ's RFC assessment or related step-five findings fail to account for Dr. Heilbrunn's

08 opinions in this respect, and therefore no error has been established.

09       Dr. Brown's Opinions

10       The ALJ described the opinions of Dr. Brown, who completed Plaintiff's only mental

11 examination of record, without assigning any particular weight:

12      The [Plaintiff] underwent a consultative psychological evaluation in September
        2006.  He alleged extreme difficulty understanding and remembering written
13      and oral information.  Upon mental status examination, he was oriented in all
        spheres.  His attitude was very cooperative and he appeared motivated to do
14      well.  He was attentive throughout the test session.  There were no signs of
        either suicidal or homicidal thinking.  He did not appear to experience
15      hallucinations or delusions.  Cognitive testing revealed a verbal IQ of 76
        (borderline range), performance IQ of 86 (low average range), and a full scale
16      IQ of 79 which placed him in the borderline range.  His ratings in the verbal
        comprehension was borderline, perceptual organization was average, working
17      memory was extremely low, and processing speed was borderline.
        Achievement testing revealed a reading score in the High School grade
18      equivalent range, spelling was in the 5th grade equivalent range, and arithmetic
        in the 4th grade equivalent range.   It was assessed that his scores were
19      indica[tive] of a cognitive disorder.  His diagnoses were rule out cognitive
        disorder (not otherwise specified), mathematics disorder, and disorder of
20      written expression.  His global assessment of functioning (GAF) was assessed
        to be 50.  It was noted that he required further testing to determine the extent of
21      his memory problems.

22 (AR 20 (citing AR 291-301).)  The ALJ later assessed Plaintiff's RFC, finding that he "can

01   get along with others, respond and adapt to workplace changes and supervision, understand

02   simple 1 to 2 step instructions and concentrate and perform simple tasks." (AR 23.) Plaintiff

03   argues that the ALJ's RFC assessment fails to account for Plaintiff's markedly impaired

04   memory, difficulty learning new skills, impaired pace, and impaired math and spelling ability,

05   as found by Dr. Brown. (Dkt. 16-1 at 3 (citing AR 293-96).)

06        The Commissioner argues that the ALJ was entitled to rely on state agency consultant

07   James Bailey, Ph.D., to translate Dr. Brown's opinions into workplace limitations. (Dkt. 14 at

08   8.) Dr. Bailey is a state agency medical consultant and, as such, he is a highly qualified

09   specialist with expertise in Social Security disability evaluation. *See* 20 C.F.R. §

10   404.1527(5)(2)(i).

11        The Court agrees with the Commissioner. Dr. Bailey explicitly considered Dr.

12   Brown's opinions and reasonably converted her medical opinions into concrete functional

13   limitations for purposes of disability evaluation, which is his area of expertise. Dr. Brown

14   opined that Plaintiff's abilities to reason, maintain sustained concentration and persistence,

15   interact socially, and adapt were average or good, and those opinions are consistent with Dr.

16   Bailey's functional assessment. (*Compare* AR 294 *with* AR 318-320.) Dr. Bailey likewise

17   translated Dr. Brown's finding that Plaintiff has "[a]verage comprehension but significantly

18   impaired Working Memory" into limitations on Plaintiff's ability to understand, remember,

19   and carry out detailed instructions. (*Compare* AR 294 *with* AR 318.) Dr. Bailey's

20   assessment that Plaintiff is not significantly limited in remembering locations and work-like

21   procedures and remembering short and simple instructions (AR 318) is not inconsistent with

22   Dr. Brown's opinions. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  (explaining how an ALJ may translate mental limitations into concrete restrictions where the

02  ALJ's assessment is "consistent with restrictions identified in the medical testimony").

03          Plaintiff contends that the ALJ overlooked Dr. Brown's findings that Plaintiff had

04  impaired memory, difficulty learning new skills, or impaired math and spelling ability, but Dr.

05  Bailey explicitly considered Dr. Brown's findings regarding Plaintiff's "memory problems,"

06  "mathematics disorder" and "borderline intellectual functioning," and nonetheless concluded

07  that he "retains the ability to understand, remember, and complete simple, repetitive tasks."

08  (AR 320.)   The ALJ was entitled to rely on Dr. Bailey's opinions regarding Plaintiff's

09  concrete limitations, and in doing so, he did not err.  *Stubbs-Danielson*, 539 F.3d at 1174; *see*

10  *also* SSR 96-6p, 1996 WL 374180 (Jul. 2, 1996) (explaining how ALJs must consider a state

11  agency consultant's assessment of a claimant's RFC).

12          Lastly, Plaintiff contends that the ALJ's RFC assessment fails to account for the

13  implications of Dr. Brown's GAF score of 50.  *See* Diagnostic and Statistical Manual of

14  Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR) (GAF of 41 to 50 describes "serious

15  symptoms" or "any serious impairment in social, occupational, or school functioning").  The

16  ALJ mentioned Plaintiff's GAF score (AR 20), but Plaintiff contends that the ALJ should

17  have interpreted the GAF score to mean that Plaintiff "would more likely than not have

18  difficulty sustaining competitive employment."  (Dkt. 16-1 at 5.)  But Plaintiff's explanation

19  is not the only reasonable interpretation of his GAF score, and has not shown that it was

20  unreasonable for the ALJ to conclude that Plaintiff retained the ability to "respond and adapt

21  to workplace changes and supervision, understand simple 1 to 2 step instructions and

22  concentrate and perform simple tasks."  (AR 23.)  Particularly in light of the Commissioner's

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01   determination that the GAF scale "does not have a direct correlation to the severity

02   requirements in [the Social Security Administration's] mental disorders listings" (65 Fed.

03   Reg. 50,746, 50,765-766 (Aug. 21, 2000)), the ALJ's reasonable interpretation should be

04   affirmed.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

05   susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

06   upheld.").

07                              RFC Assessment & VE Testimony

08          In addition to the arguments related to the ALJ's RFC assessment addressed in the

09   previous section, Plaintiff further contends that the ALJ erred by relying on the VE's

10   testimony that Plaintiff could perform jobs requiring reasoning level 2.   According to

11   Plaintiff, a finding that he could perform jobs requiring reasoning level 2 is inconsistent with

12   the ALJ's RFC assessment limiting him to understanding simple 1- to 2-step instructions and

13   performing simple tasks.  The Commissioner agrees that all of the jobs identified by the VE

14   required reasoning level 2, but contends that Plaintiff is not precluded from performing such

15   jobs under the ALJ's RFC assessment.

16          The DOT defines jobs requiring reasoning level 2 as requiring the ability to "[a]pply

17   commonsense understanding to carry out detailed but uninvolved written or oral instructions.

18   Deal with problems involving a few concrete variables in or from standardized situations."

19   DOT, Appendix C, *available at* 1991 WL 688702 (1991).   Reasoning level 1 requires a

20   worker to "[a]pply commonsense understanding to carry out simple one- or two-step

21   instructions.  Deal with standardized situations with occasional or no variables in or from

22   these situations encountered on the job." *Id.*

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01          There is no Ninth Circuit authority defining the precise correlation between reasoning

02   levels and functional limitations identified in an RFC assessment.  Some district court cases

03   emphasize that DOT reasoning levels do not directly match functional limitations as defined

04   by Social Security regulations.  *See Meissl v. Barnhart*, 403 F.Supp.2d 981, 983 (C.D. Cal.

05   2005); *Bordbar v. Astrue*, 2011 WL 486540, at *3 (C.D. Cal. 2011).  Other unpublished cases

06   reason that a limitation to understanding one- or two-step instructions correlates to reasoning

07   level 1 jobs.  *See Pouria v. Astrue*, 2012 WL 1977278, at *1-2 (C.D. Cal. Jun. 1, 2012);

08   *Hamlett v. Astrue*, 2012 WL 469722, at *4 (C.D. Cal. Feb. 14, 2012); *Grigsby v. Astrue*, 2010

09   WL 309013, at *2 (C.D. Cal. Jan. 22, 2010).  Others have specifically held that a limitation to

10   one- or two-step instructions is consistent with jobs requiring reasoning level 1 *or* 2.  *See, e.g.*,

11   *Lee v. Astrue*, 2010 WL 653980, at *10-11 (E.D. Cal. Feb. 19, 2010); *Seechan v. Astrue*, 2010

12   WL 1812637, at *10-11 (E.D. Cal. May 5, 2010); *Harrington v. Comm'r of Social Sec.*

13   *Admin.*, 2008 WL 4492614 (S.D. Cal. Sept. 29, 2008).

14          In *Meissl*, the only published case on this issue within this circuit, the ALJ limited the

15   claimant to simple tasks performed at a routine or repetitive pace, but also accepted a VE's

16   testimony that Plaintiff could perform two jobs requiring a reasoning level of 2.   403

17   F.Supp.2d at 982.  The court affirmed, reasoning:

18          Here, the ALJ found that Meissl could perform not just simple tasks but also
             ones that had some element of repetitiveness to them. A reasoning level of one
19          on the DOT scale requires slightly less than this level of reasoning. While
             reasoning level two notes the worker must be able to follow "detailed"
20          instructions, it also (as previously noted) downplayed the rigorousness of those
             instructions by labeling them as being "uninvolved."
21
             The Court finds that there is much to recommend for believing that Meissl's
22          reasoning level is at level two rather than at level one. A reasoning level of one

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01  indicates, both by the fact that it is the lowest rung on the development scale as
    well as the fairly limited reasoning required to do the job, as applying to the
02  most elementary of occupations; only the slightest bit of rote reasoning being
    required. For example, the DOT describes the following jobs as requiring only
03  a reasoning level of one: Counting cows as they come off a truck (job title
    Checker (motor trans.)); pasting labels on filled whiskey bottles (job title
04  Bottling-Line Attendant (beverage)); and tapping the lid of cans with a stick
    (job title Vacuum Tester, Cans). *See* DOT at 931, 936, 938. Someone able to
05  perform simple, repetitive instructions indicates a level of reasoning
    sophistication above those listed. Other courts have so held. *See Hackett v.*
06  *Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two
    reasoning appears more consistent with Plaintiff's RFC" to "simple and routine
07  work tasks"); *Money v. Barnhart,* 91 Fed.Appx. 210, 214, 2004 WL 362291, at
    *3 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the
08  mandate that her work be simple, routine and repetitive"). As one court
    explained:
09
10          The ALJ's limitation for the Plaintiff, with respect to an
            appropriate reasoning level, was that she could perform work
11          which involved simple, routine, repetitive, concrete, tangible
            tasks. Therefore, the DOT's level two reasoning requirement did
12          not conflict with the ALJ's prescribed limitation. Although the
            DOT definition does state that the job requires the
13          understanding to carry out detailed instructions, it specifically
            caveats that the instructions would be uninvolved—that is, not a
            high level of reasoning.
14
15  403 F.Supp.2d at 984-85 (quoting *Flaherty v. Halter*, 182 F. Supp.2d 824, 850 (D. Minn.
16  2001)).

17          Though the Commissioner emphasizes that *Meissl* found that a reasoning level 2 was
18  consistent with a limitation to simple and routine work tasks, the Commissioner does not
19  acknowledge that the ALJ's RFC assessment here is distinguishable from the assessment in
20  *Meissl*: here, the ALJ specifically limited Plaintiff to simple tasks *with one- or two-step*
21  *instructions*.  *Meissl* does not address whether *this* limitation is inconsistent with reasoning
22  level 2.  While *Meissl* stands for the proposition that a limitation to simple tasks is not

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01    necessarily inconsistent with an ability to perform a job requiring reasoning level 2, Plaintiff

02    was arguably more limited than the claimant in *Meissl*.[5]

03    　　　　The limitations identified by the ALJ in this case match more closely to the limitations

04    described in *Pouria*, *Hamlett*, and *Grigsby*.  In all three of these recent cases, the ALJs limited

05    the claimants to jobs involving no more than two-step instructions, and the courts held that

06    such a limitation corresponds to reasoning level 1.  *See Pouria*, 2012 WL 1977278, at *3

07    ("[A] limitation to one- or two-step tasks corresponds to Reasoning Level One"); *Hamlett*,

08    2012 WL 469722, at *4 ("A limitation of two steps of instruction corresponds to Level 1

09    reasoning); *Grigsby*, 2010 WL 309013, at *2 ("The restriction to jobs involving no more than

10    two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning.").

11    　　　　Not all district courts in the Ninth Circuit have agreed with this analysis, however.

12    Some courts focus on the fact that reasoning level 1 jobs are on the lowest end of the

13    reasoning scale, and conclude that the ALJ's RFC assessment does not restrict the claimant to

14    that degree.  *See, e.g.*, *Lee*, 2010 WL 653980, at *11; *Seechan*, 2010 WL 1812637, at *10-11.

15    In *Harrington*, the court determined that a one/two-step instruction limitation was compatible

16    with reasoning level 2 in light of the other limitations described in the RFC assessment:

17    　　　　The ALJ found that Harrington has the following residual functional capacity:

18    　　　　　　The claimant can understand detailed but uncomplicated
        　　　　　　instructions and simple, one/two step instructions, can maintain
19    　　　　　　concentration and attention for simple, repetitive work, can
        　　　　　　relate and interact with the public, supervisors, and co-workers,
20

21    　　　　　[5] The Tenth Circuit case also cited by the Commissioner is likewise not precisely on all fours.
        *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (concluding that a limitation to "simple
22    and routine work tasks" was inconsistent with a reasoning level 3 job and "more consistent" with a
        reasoning level 2 job).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01          and can tolerate low and moderate to high stress work.

02          Judge Parker did not limit Plaintiff to only having the ability to apply
            "commonsense understanding to carry out simple one- or two-step
03          instructions" or only "deal with standardized situations with occasional or no
            variables," which is the essence of reasoning level one.  DOT, No. 230.687-
04          010 at 205.  Rather, he found that Plaintiff can understand "detailed but
            uncomplicated instructions" and perform "simple, repetitive work." The
05          residual functional capacity finding clearly puts Plaintiff beyond reasoning at
            level one.

06

07    2008 WL 4492614, at *10 (internal citations to the administrative record omitted).   The

08    *Harrington* court's approach requires a close reading of the ALJ's RFC assessment in order to

09    determine how it compares to reasoning level requirements, and this approach has also been

10    employed in this district.   *See Morgan v. Astrue*, Case No. 11-422JLR, Report and

11    Recommendation (Dkt. 22) at 10-15 (Nov. 28, 2011).

12          In this case, the ALJ's RFC assessment language is analogous to reasoning level 1

13    only.   The ALJ specifically found that Plaintiff could understand "simple 1 to 2 step

14    instructions" and "perform simple tasks."  (AR 23.)  The ALJ does not address the question of

15    Plaintiff's ability to carry out detailed (though uninvolved) instructions, as is required in

16    reasoning level 2 jobs.  On remand, the ALJ should specifically address Plaintiff's ability to

17    perform at the reasoning level required by the proffered jobs, with factual findings and

18    appropriate references to the record.[6]

19    _____

20          [6] Plaintiff also briefly argues that the ALJ's hypothetical failed to include his pace limitations.
      (Dkt. 13 at 18-19.)  But the ALJ's RFC assessment does not include a pace limitation, and neither Dr.
21    Brown nor Dr. Bailey identified a pace limitation.  Dr. Brown describes Plaintiff's limits in processing
      speed, but this limitation refers to the speed with which Plaintiff's processes information, not the pace
      with which he completes work tasks.  (AR 296.)  Thus, because Plaintiff has not shown that the ALJ
22    should have found a pace limitation with regard to completing work tasks (*see* AR 319 (describing a
      pace limitation for purposes of disability evaluation)), the ALJ did not err by failing to include a pace

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01                                    <u>Plaintiff's Credibility</u>

02          The ALJ summarized Plaintiff's description of his impairments and how they affect

03   his ability to work:

04          [Plaintiff] alleged the inability to work due to the inability to bend the right
            forefinger due to previous torn nerve endings and ligaments.  He also alleged
05          problems staying focused and memory deficit.  However, he indicated that he
            took psychotropic medication for only 1½ to 2 months.  He denied receiving
06          any psychotherapy after 2002.  He reported that he received chiropractic care
            in the 1990's due to back pain related to a childhood back injury. He denied
07          receiving any current medical treatment for recurrent back pain but indicated
            that at times, he takes over-the-counter aspirin or Tylenol.  He denied having
08          any back injections or back surgery in the past.  Regarding his functional
            capacity, he alleged the inability to sit for no more than 3 to 4 hours at one
09          time, lift no more than 50 to 60 pounds, walk for up to one hour on a flat
            surface, and stand for up to one hour at one time.  In reference to activities, he
10          testified that he is able to drive a motorized vehicle, visit with his girl friend
            three times per week, visit his children, watch television, help his friend by
11          washing dishes, and perform other activities for his friend.

12   (AR 24.)

13          The ALJ found that Plaintiff's alleged "symptoms are not credible to the extent they

14   are inconsistent with the above residual functional capacity assessment" (AR 24) and

15   provided three[7] specific reasons for discounting Plaintiff's allegations: (1) Plaintiff's lengthy

16   work history, despite his cognitive impairments; (2) Plaintiff's daily activities; and (3)

17   Plaintiff's lack of treatment or medications for his mental-health symptoms.  (AR 24-25.)

18   / / /

19   limitation in the hypothetical.

20          [7] The ALJ also notes Plaintiff's criminal history in this section, and Plaintiff contends that this
     was an improper reason to discount Plaintiff's credibility.  (Dkt. 16-1 at 8.)  Reading the section as a
21   whole, however, it appears that the ALJ mentioned Plaintiff's criminal history to explain the timeline
     of Plaintiff's prior work, showing that his job ended because of incarceration and not because of
22   impairments.  (AR 24.)  Thus, the Court concludes that the ALJ did not discount Plaintiff's credibility
     on account of his criminal history.

01      Legal Standards

02          In assessing credibility, an ALJ must first determine whether a claimant presents

03  "objective medical evidence of an underlying impairment 'which could reasonably be

04  expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d

05  1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

06  Given presentation of such evidence, and absent evidence of malingering, an ALJ must

07  provide clear and convincing reasons to reject a claimant's testimony.  *Id.   See also Vertigan*

08  *v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).   Plaintiff contends that the ALJ did not

09  provide any legally valid reason to reject any of his testimony.

10      Work History

11          The ALJ described the inconsistency between Plaintiff's work history and the

12  debilitating symptoms he described experiencing due to his lifelong cognitive impairments:

13          Despite the claimant's allegations of cognitive deficits, he worked steadily and
            successfully from 1981 to 2001.  (Exhibit 3D).  He reported that he stopped
14          working in 2005 after he lost his job.  At the previous job, he was laid off from
            work.  It is noted that [] he was performing at [] "satisfactory" to "highly
15          satisfactory" levels before he lost his job as a result of a reduction in force
            (RIF) employer action and not for any medical reason or alleged impairments.
16          (See Exhibit 14F).  In addition, it is noted that the claimant was incarcerated in
            2003 for 13 to 15 months (through 2005).

17

18  (AR 24.)  Plaintiff contends that he earned "little" between 1981 and 1987, and that his main

19  job after that time with the Navy was an accommodated job for handicapped people.   Thus,

20  Plaintiff posits that the ALJ erred in viewing his work history as inconsistent with his

21  allegations of cognitive deficits.

22          Unfortunately for Plaintiff, the record does not corroborate his characterization of the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01   Navy job as "accommodated."  Beyond his own description of the job as accommodating his

02   tendency to get confused (AR 183), Plaintiff relies exclusively on a 1986 letter written by a

03   vocational rehabilitation counselor asking the personnel director at Bremerton Naval Base to

04   consider hiring Plaintiff via the Severely Disabled Hiring Program.  (AR 365.)   The letter

05   does not suggest that the job was accommodated, but only that Plaintiff was hired via this

06   program.  Furthermore, when Plaintiff's job was terminated, his termination letter referred to

07   his job as a "competitive" (not "excepted," the term for a person performing accommodated

08   work) employee.  *See* AR 366.   Thus, the record does not support Plaintiff's contention that

09   he performed accommodated work.

10          Accordingly, Plaintiff's successful and lengthy work history does undermine his

11   testimony that his cognitive impairments prevent him from working.  When asked by the ALJ

12   to name the biggest reason why he cannot work, the Plaintiff answered that he is "slow, I

13   guess."  (AR 60.)  But Plaintiff has not shown that his cognitive condition has worsened over

14   time, or that any of his previous jobs were terminated as a result of his cognitive impairments.

15   (*See* AR 64-68 (describing the circumstances under which he lost his previous jobs: reduction

16   in force, drug relapse, finger injury)).   The ALJ was therefore entitled to disbelieve Plaintiff's

17   description of severe cognitive impairment as inconsistent with Plaintiff's successful years of

18   work history.  *See Light v. Social Sec. Admin.*, 119 F.d 789, 792 (9th Cir. 1997) ("In weighing

19   a claimant's credibility, the ALJ may consider . . . inconsistencies either in his testimony or

20   between his testimony and his conduct, his daily activities, his work record, and testimony

21   from physicians and third parties concerning the nature, severity, and effect of the symptoms

22   of which he complains.")

01        Daily Activities

02        The ALJ briefly mentions Plaintiff's daily activities as inconsistent with his

03   allegations, but the ALJ does not specify which activities contradict which allegations.  (AR

04   24.)  Earlier in the decision, however, the ALJ did summarize Plaintiff's daily activities —

05   caring for his daughter and son, watching television and playing video games, caring for a cat,

06   taking care of personal needs, shopping for groceries and preparing meals, washing dishes,

07   driving — and concluded that Plaintiff's ability to complete those activities demonstrates

08   "mild restriction."  (AR 21.)  The ALJ was entitled to consider those activities for purposes of

09   evaluating Plaintiff's credibility, and reasonably found that his own description of daily

10   activities was inconsistent with his description of a complete inability to work.  *See*

11   *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (explaining that inconsistencies in

12   a claimant's testimony are properly considered in assessing a claimant's credibility).

13        Lack of Mental-Health Treatment or Medications

14        The ALJ also cited Plaintiff's lack of treatment or medication related to his psychiatric

15   or mental-health symptoms:

16        If an impairment can reasonably be controlled by medication or treatment, it
          cannot serve as a basis for a finding of disability.  (20 CFR 404.1530).  He
17        indicated that he is not taking any medications for any psychiatric symptoms.

18        The claimant is not seeking or receiving frequent medical treatment, which
          tends to undermine his allegations of incapacitating symptoms.  He reported
19        that he does not receive regular medication treatment or receive any treatment
          from a mental health professional.

20

21   (AR 24-25.)  It is unclear precisely which "incapacitating symptoms" the ALJ had in mind

22   here.  Assuming that the ALJ is referring to Plaintiff's depression, it is true that Plaintiff has

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -20

01  not received treatment or medication for his depression — and this could be a reason to

02  discount Plaintiff's brief descriptions of depression symptoms.  (AR 221, 237.)  For the most

03  part, Plaintiff's testimony and statements emphasized his physical injuries and his cognitive

04  impairments.  *See* AR 60 (Plaintiff's hearing testimony describing his cognitive impairments

05  as the main reason why he cannot work); AR 175 (Plaintiff's statement describing his

06  physical injuries and his cognitive impairments as limiting his ability to work).  But to the

07  extent that Plaintiff also described depression symptoms, his lack of treatment and medication

08  for those symptoms is a clear and convincing reason to discount his subjective description.

09          As a final comment on the ALJ's credibility analysis, the Court notes that the Plaintiff

10  has not identified any particular testimony that he contends was either erroneously rejected or

11  clearly establishes disability; indeed, the ALJ's RFC assessment accounts for Plaintiff's

12  cognitive impairments and right-hand limitations, at least to some degree.  The ALJ's adverse

13  credibility finding may have been superfluous, given that Plaintiff's specific descriptions of

14  impairments are not wholly inconsistent with the ALJ's RFC assessment.  But to the extent

15  that Plaintiff testified that he was entirely unable to work, the Court finds that the ALJ

16  provided clear and convincing reasons to discount his credibility and thus did not err.

17                              <u>Lay Witness Evidence</u>

18          The record contains written statements from lay witnesses Della Mydske and Judy

19  Munn.  Ms. Mydske described Plaintiff's functioning in one statement dated March 6, 2007,

20  and another questionnaire dated November 23, 2009.  (AR 203-11, 244-49.)  The ALJ did not

21  mention Ms. Mydske's statements in his written decision.

22          The ALJ briefly refers to Ms. Munn's report that Plaintiff has a learning disability but

01   also "excellent visual learning skills."  (AR 20 (citing AR 365).)  Plaintiff contends that the

02   ALJ overlooked Ms. Munn's statement that Plaintiff's "disabilities are obviously a factor in

03   preventing him from obtaining employment in the private sector."  Dkt. 13 at 21 (citing AR

04   365).

05        Legal Standards

06        Lay witness testimony as to a claimant's symptoms or how an impairment affects

07   ability to work is competent evidence and cannot be disregarded without comment.  *Van*

08   *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ can reject the testimony of

09   lay witnesses only upon giving germane reasons.  *Smolen v. Chater*, 80 F.3d 1273, 1288-89

10   (9th Cir. 1996) (finding rejection of testimony of family members because, *inter alia*, they

11   were "'understandably advocates, and biased'" amounted to "wholesale dismissal of the

12   testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane

13   to each individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

14   1993)).

15        However, the failure to disregard lay testimony without comment may be deemed

16   harmless.  An error is harmless where it is "'inconsequential to the ultimate nondisability

17   determination.'"  *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (quoting *Stout v.*

18   *Comm'r, Social Sec. Admin.*, 454 F.3d 1050 1055 (9th Cir. 2006)).  As recently held by the

19   Ninth Circuit, "'an ALJ's failure to comment upon lay witness testimony is harmless where

20   'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also

21   discredits [the laywitness's] claims.'"  *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549,

22   560 (8th Cir. 2011); also describing harmless error as occurring where an "ALJ's well-

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -22

01 supported reasons for rejecting the claimant's testimony apply equally well to the lay witness

02 testimony[.]")  The Ninth Circuit distinguished its prior decision in *Stout*, wherein the Court

03 held that failure to address lay testimony may not be deemed harmless where "no reasonable

04 ALJ, when fully crediting the testimony, could have reached a different disability

05 determination[,]" as involving lay testimony identifying limitations not considered by the

06 ALJ, uncontradicted by anything in the record, and highly probative of an individual's

07 inability to work in a competitive environment. *Id*. at *26-28.

08    Ms. Mydske's Statements

09    The Commissioner concedes that the ALJ did not address Ms. Mydske's statements in

10 the written decision, but argues that the error was harmless because her testimony could be

11 rejected for the same reasons that the ALJ rejected Plaintiff's testimony.  Specifically, the

12 Commissioner contends that Ms. Mydske's description of Plaintiff's activities was

13 inconsistent with a description of debilitating symptoms, and that her description of his

14 abilities is inconsistent with his work history.

15    The Court cannot find the ALJ's failure to consider Ms. Mydske's statements to be

16 harmless, however, because Ms. Mydske provided more detailed descriptions of Plaintiff's

17 abilities than Plaintiff himself provided.  Ms. Mydske provided specific examples of

18 Plaintiff's impaired memory; described Plaintiff's neck, knee, and hip pain; and detailed

19 Plaintiff's lack of "common sense" and difficulty understanding instructions, and inability to

20 stay on task. (AR 244-49.)  She also described Plaintiff's right index finger as "not working

21 at all." (AR 245.)  Ms. Mydske's statements are not merely reiterations of Plaintiff's own

22 statements, and the ALJ's reasons for discounting Plaintiff's testimony do not apply equally

01  well to Ms. Mydske's statements.  The ALJ's failure to address Ms. Mydske's statements was

02  therefore not harmless.  *See Molina v. Astrue*, 674 F.3d 1104, 1121-22 (9th Cir. 2012)

03  (holding that an ALJ's failure to comment upon lay witness testimony describing the same

04  limitations as the claimant described is harmless where the same evidence that the ALJ

05  referred to in discrediting the claimant's testimony applies to the lay testimony).  On remand,

06  the ALJ shall consider Ms. Mydske's statements, explicitly address the weight to be given the

07  statements, and, if necessary, reconsider the effect of Ms. Mydske's statements on any other

08  findings.

09      Ms. Munn's Letter

10          Ms. Munn was a vocational rehabilitation counselor in Washington's Department of

11  Social and Health Services' vocational rehabilitation division, and wrote a letter on Plaintiff's

12  behalf on October 24, 1986, to recommend him for employment at a U.S. Naval base in

13  Bremerton, Washington.  (AR 365.)  Ms. Munn wrote, in pertinent part:

14          Don has a Specific Learning Disability (a developmental reading and
        language disorder).  He has excellent visual learning skills, but he has

15      functional limitations learning information auditorily.  His training should take
        into consideration that he learns very well by demonstration and written

16      instructions that are not of a complex nature.

17          Don's disabilities are obviously a factor in preventing him from
        obtaining employment in the private sector.

18

19  (AR 365.)  The ALJ referred to Ms. Munn's description of Don's limitations in the first

20  quoted paragraph, but Plaintiff contends that the ALJ erred by not referencing the second

21  quoted paragraph.

22          The Court disagrees with Plaintiff.  The second quoted paragraph contains an opinion

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -24

01   beyond Ms. Munn's field of expertise, and the opinion is of questionable value to the ALJ's

02   findings in the five-step disability evaluation process.   Whether Plaintiff's impairments

03   prevent him from performing a job is one of the issues reserved to the Commissioner.   *See*

04   SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996).   Thus, the ALJ did not err in failing to discuss

05   Ms. Munn's opinion regarding the effect of Plaintiff's disabilities on his employability.

06                                                          **<u>CONCLUSION</u>**

07          Remand for further proceedings is appropriate where additional proceedings could

08   remedy defects in the Commissioner's decision.   *See Harman v. Apfel*, 211 F.3d 1172, 1179

09   (9th Cir. 2000).   Upon remand, the ALJ should either make further findings regarding

10   Plaintiff's ability to perform reasoning level 2 jobs, or obtain further VE testimony regarding

11   alternative occupations that Plaintiff could perform.   The ALJ should also discuss the lay

12   witness statements of Ms. Mydske.

13          For the reasons set forth above, this matter should be REVERSED and REMANDED

14   for further administrative proceedings.

15          DATED this <u>12th</u> day of September, 2012.

16

17                                                          _____

18                                                          Mary Alice Theiler
                                                            United States Magistrate Judge

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -25